UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM G. LAURY,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT HOWARD LOBUE, et al.,<br><br>Defendants. | No. 1:20-cv-01463-DAD-SKO<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF<br><br>(Doc. No. 1) |

On October 15, 2020, plaintiff Tom G. Laury, proceeding *pro se*, filed a complaint and motion for injunctive relief under the Perishable Agricultural Commodities Act ("PACA"), seeking preliminary injunctive relief to prevent defendants from dissipating assets held in a statutory trust for him. (Doc. No. 1.) On December 24, 2020, defendants filed their opposition to the motion for injunctive relief, and plaintiff filed his reply thereto on January 4, 2021. (Doc. Nos. 11, 12.) On January 6, 2021, the court issued an order requesting supplemental briefing on the issue of notice. (Doc. No. 13.) Defendants filed their supplemental briefing on January 13, 2021 and plaintiff filed his supplemental briefing on January 14, 2021. (Doc. Nos. 14, 15.) For the reasons explained below, the court will deny plaintiff's motion for a preliminary injunction.

**BACKGROUND**

The following facts are discernable from plaintiff's complaint and the briefing submitted on the pending motion. Between January 1, 2020 and January 6, 2020, plaintiff sold citrus fruits

to defendants Vincent and Christine LoBue, who owned, operated and did business as California Fresh Citrus Company ("CFCC"). (Doc. No. 11 at 3.) Defendants are the only shareholders and officers of CFCC. (*Id*. at 8.) Defendants agreed to purchase plaintiff's fruit and re-sell it to various entities in Australia. (Doc. No. 1 at 5.) Defendants accepted plaintiff's fruit, which was picked on January 4 and 5, 2020; processed on January 5 and 6, 2020; and then exported to Australia with payment to be made six weeks following shipment. (Doc. No. 11 at 3.) Plaintiff alleges that CFCC and the LoBues were insolvent, heavily in debt, and had obligated incomes from fruit sales to third party creditors at the time of their agreement with plaintiff, though plaintiff did not know this. (Doc. No. 12 at 5.) The total invoice amount from the parties' fruit sale is disputed. Defendants contend that plaintiff is owed at most $2,235.09. (*Id*. at 2.) Plaintiff, in contrast, alleges that defendants owe him $40,000. (Doc. No. 12 at 2.) Plaintiff argues that the figure defendants offer includes deductions of expenses that were not agreed to nor discussed prior to the contract being entered. (*Id*.) Plaintiff contends that had defendants paid plaintiff $10-$15 per carton, the total of 2,922 cartons would yield an amount matching the promised $30,000 to $40,000. (*Id*.) To date, defendants have not provided any sales records to plaintiff. (*Id*.)

Plaintiff initially attempted to reach defendants by phone and email, but defendants were unresponsive. (Doc. No. 1 at 5.) Plaintiff met with defendants in person, at which time defendants promised to provide an accounting and admitted to using the money owed to plaintiff for expenses. (*Id*.) Defendant Vincent LoBue also allegedly promised to pay plaintiff. (Doc. No. 11-2 at 12.) On March 6, 2020, defendants made a partial payment to plaintiff by check in the amount of $5,000. (Doc. No. 15 at 2.) After plaintiff made unsuccessful attempts to collect full payment of the debt, he initiated a PACA complaint against CFCC on March 23, 2020. (Doc. No. 1 at 8) ("Complainant instituted this reparation proceeding under the Perishable Agricultural Commodities Act, 1930, as amended (7 U.S.C. §§499a-499s) . . . and the Administrative Procedures under the PACA (7 C.F.R. §§ 47.1-47.49.")) A copy of this complaint was served on defendants. (Doc. No. 1 at 8.) Defendants failed to contest plaintiff's complaint and plaintiff received a default order on September 11, 2020 from the administrative law judge, who granted a reparation award against CFCC. (*Id*.) On or about March 15, 2020, defendant Vincent LoBue

suffered a stroke that left him unable to communicate.  (Doc. No. 11 at 3.)  Defendants contend this medical emergency explains their inability to defend against plaintiff's PACA complaint. (*Id*.)  The administrative law judge adopted the facts alleged in the formal complaint as true and found that defendants violated 7 U.S.C. § 499b.  (Doc. No. 1 at 9.)  The default order states that within 30 days of that order, "[defendants] shall pay [plaintiff] as reparation $40,000 with interest thereon at the rate of .12 of 1% per annum from February 1, 2020, until paid, plus the amount of $500.00."  (*Id*. at 10.)  However, plaintiff neither received a payment nor a proposed payment plan from defendants within 30 days, resulting in the instant suit being brought.  The operations of CFCC have ceased, the proceeds stemming from the sale of all citrus products—including plaintiff's—have been segregated, and CFCC apparently filed for bankruptcy on December 31, 2020.  (Doc. No. 11 at 3.)  Accordingly, CFCC will turn over all sale proceeds to the Chapter 7 Trustee for administration.  (*Id*.)

Plaintiff's complaint seeks preliminary injunctive relief to freeze defendants' assets in order to prevent defendants from "dissipating and [hiding]" funds that are owed to him.  (Doc. Nos. 1 at 5–6; 14-1 at 2.)

**LEGAL STANDARD**

**A.     PACA**

"Congress enacted PACA in 1930 to promote fair trading practices in the produce industry."  *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000).  In particular, "perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpair sellers."  *Id*. at 136; *see also* 7 U.S.C. § 499e(c)(2).  If a seller of produce is not paid, it must either give written notice of its intent to preserve its rights to the benefits of the trust with the U.S. Department of Agriculture and the produce buyer within 30 days, *see* 7 U.S.C. § 499e(C)(3); *Tanimura & Antle, Inc.*, 222 F.3d at 136, or include a statutorily specified notice on its invoices, *see* 7 U.S.C. § 499e(c)(3); *Tanimura & Antle, Inc.*, 222 F.3d at 136.  Any failure to "make full payment promptly" in respect to a transaction is unlawful.  7 U.S.C. § 499b(4).  Any violation of § 499b subjects the buyer to

3

liability for any damages caused by the violation. 7 U.S.C. § 499e(a). Moreover, federal regulations state that all dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R § 46.46(d)(1). District courts are specifically given jurisdiction to hear "actions by trust beneficiaries to enforce payment from the trust" and "actions by the Secretary to prevent and restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5). The trust formed by PACA from the dealer's assets is "a single, undifferentiated trust for the benefit of all sellers and suppliers." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996).

### B.     Preliminary Injunction

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. For Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter* 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (*en banc*)).[1] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Finally, an injunction is "an extraordinary remedy that may

/////

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

PACA had the intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." *Farley and Calfree, Inc. v. United States Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991). "Dealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce." 7 U.S.C. § 499b(4); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997).

District courts in the Ninth Circuit have regularly found TROs warranted in the PACA context, and routinely conclude that the prospect of statutory trust assets being depleted constitutes irreparable injury. *See, e.g.*, *Chula Brand CA, Corp. v. Martinez*, No. 3:17-cv-00037-JLS-KSC, 2017 WL 107672, at *3–4 (S.D. Cal. Jan. 11, 2017); *Newland N. Am. Foods, Inc. v. H.P. Skolnick, Inc.*, No. 5:13-cv-00934-EJD, 2013 WL 792672, at *3 (N.D. Cal. Mar. 4, 2013); *Herb Fresh, LLC v. GR Prods., LLC*, No. 5:12-cv-03669-EJD, 2012 WL 2906592, at *2–3 (N.D. Cal. July 16, 2012); *Pittman v. Stow Food – Navajo, Inc.*, No. 3:12-cv-01670-IEG-WMC, 2012 WL 12885231, at *1–2 (S.D. Cal. July 6, 2012); *T.Q.M. Food Serv., Inc. v. Santanas Grill, Inc.*, No. 3:12-cv-01254-IEG-MDD, 2012 WL 12872452, at *1–2 (S.D. Cal. June 6, 2012); *Batth v. Market 52, Inc.*, No. 1:11-cv-01806-AWI-SKO, 2011 WL 5240439, at *2 (E.D. Cal. Nov. 1, 2011); *F.T. Produce, Inc. v. AGWA, Inc.*, No. 3:11-cv-00102-JLS-WVG, 2011 WL 677259, at *3 (S.D. Cal. Jan. 21, 2011); *Rey Produce SFO, Inc. v. Mis Amigos Meat Market, Inc.*, No. 3:08-cv-01518-VRW, 2008 WL 1885738, at *1–2 (N.D. Cal. 2008) (granting preliminary injunction, and noting a TRO was previously granted).

Here, however, defendants make two principal arguments as to why plaintiff's request for injunctive relief should be denied. First, defendants argue that plaintiff did not preserve his PACA trust rights. (Doc. No. 11 at 5.) Second, defendants argue that plaintiff has named the wrong parties in bringing this action. (*Id.*) Defendants contend that the agreement at issue is

/////

/////

between plaintiff and CFCC (a corporation), not between plaintiff and the individual defendants here.[2]  (*Id.*)

### A. Preservation of PACA Rights

Although a PACA trust "automatically goes into effect at the time possession of produce is transferred, sellers must properly preserve their trust rights by meeting specific notification requirements." *In re Enoch Packing Co., Inc.*, No. 1:06-cv- 00388-AWI, 2007 WL 1589537, *5 (E.D. Cal. June 1, 2007) (citations omitted).  Unless a produce seller complies strictly with the PACA notice provisions, any PACA trust rights will be lost.  *Id*.  The notice requirements under PACA are as follows:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust . . . within thirty calendar days (i) after the expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, *as the parties have expressly agreed to in writing before entering into the transaction*, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.

7 U.S.C. § 499e(c)(3) (emphasis added); *see also In re Enoch Packing Company, Inc.*, 386 F. App'x. 611, 613 (9th Cir. 2010).[3]

Here, plaintiff argues that he and the named defendants had a verbal agreement that payment was due six weeks after the fruit was packed, that is on February 17, 2020.  (Doc. No. 12 at 4.)  Plaintiff further alleges that he repeatedly attempted to contact defendants by telephone and by personal visits and finally succeeded in making his demand for payment on March 6, 2020, when defendants made a partial payment of the amount due by check.  (*Id.*)

---

[2]  Although the court does not reach this second argument advanced by defendants, it notes that the Ninth Circuit has explicitly held that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc.*, 104 F.3d at 283.

[3]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

However, the notice requirement under PACA is clear.  The language of the statute unambiguously requires that the seller give notice to the buyer within thirty calendar days after payment is due.  *See In re San Joaquin Food Serv. Inc.*, 958 F.2d 938, 940 (9th Cir. 1992).  Although parties can make payment due at a time other than upon delivery, "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days after receipt and acceptance of the commodities . . .."  *See* 7 C.F.R. § 46.46(e)(2).  Accordingly, parties may at most set payment for thirty days after delivery, making notice to preserve the seller's trust rights due a total of sixty days after delivery.  Even so, such an agreement must be express and in writing per 7 U.S.C. § 499e(c)(3).  Here, plaintiff concedes in the allegations of his complaint that the six-week time frame for payment was pursuant to an oral agreement reached by the parties and not one reduced to writing.  (Doc. No. 1 at 4–5.)

Regardless of the deadline for notice, none of plaintiff's purported examples of his having provided notice satisfy the requirement for preservation of his PACA rights.  The only example of written notice within the potentially permissible time frame is an email dated February 19, 2020 from plaintiff to defendants asking them to call him.  (Doc. No. 15 at 3).  It is the case that a party may alternatively preserve their trust rights through a bill or invoice statement that includes the required language from 7 U.S.C. § 499e(c)(4).  In this case, the court requested supplemental briefing and documentation with respect to any such notice by invoice.  (Doc. No. 13.)  The supplemental materials submitted by plaintiff in response to the court's request, however, did not include any such invoices and do not serve to cure his failure to provide defendants with the required notice.  (Doc. No. 15.)

The court has conducted a thorough review of the record and finds no evidence of the statutorily required notice having been given by plaintiff.  Absent proper notice, plaintiff cannot enforce his PACA rights.  Accordingly, plaintiff has not shown a likelihood of success on the merits and the court's preliminary injunction analysis ends there.  *See Munaf v. Green*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'") (citations omitted).

**CONCLUSION**

Because plaintiff has failed to show that he provided the required written notice of his intent to preserve the benefits of the PACA trust within the statutorily mandated time, the court must deny his request for injunctive relief. Accordingly, plaintiff's motion for the issuance of a preliminary injunction (Doc. No. 1) is denied.

IT IS SO ORDERED.

Dated:  **January 19, 2021**       /s/ Dale A. Drozd
                                                                  UNITED STATES DISTRICT JUDGE